## COMMONWEALTH *vs.* ABNER ROGERS, Jr.

*The right of a party, who is put on trial for a capital offence, to a peremptory chal-*
*lenge of jurors, must be exercised, if at all, before the jurors are interrogated by*
*the court concerning their bias and opinions.*

A person convicted of the offence of receiving stolen goods, knowing them to have
been stolen, *is not a competent witness.*

A party indicted is not entitled to an acquittal on the ground of insanity, if, at the
time of the alleged offence, he had capacity and reason sufficient to enable him to
distinguish between right and wrong, and understood the nature, character and con-
sequences of his act, and had mental power sufficient to apply that knowledge to
his own case.

Where the delusion of a party is such, that he has a real and firm belief of the ex-
istence of a fact which is wholly imaginary, and under that insane belief he does
an act which would be justifiable if such fact existed, he is not responsible for such
act. Nor is a party responsible for an act done under an uncontrollable impulse,
which is the result of mental disease.

Where professional men, who have long been conversant with insanity in its vari-
ous forms, and have had the superintendence of insane persons, attend the trial of
a party who is indicted for a crime, and whose defence is insanity, and hear the tes-
timony in the case, their opinions, on the question whether the party was insane,
are competent evidence, though they never personally examined the party.

A jury is authorized to find that a party, who is indicted, was insane at the time of the
alleged offence, if the preponderance of the evidence is in favor of his insanity.

THE defendant was indicted for the murder of Charles Lin-
coln, jr. warden of the state prison, on the 15th of June 1843.

When the court were proceeding to empannel the jury, the
counsel for the defendant inquired whether, if he chose to exer-
cise the right of peremptory challenge, given by the Rev. Sts. *c.*
137, § 5, he must do it before the court interrogated the juror
as to his having expressed or formed any opinion, or being sen-
sible of any bias, or prejudice, or holding such opinions as would
preclude him from finding any defendant guilty of an offence pun-
ishable with death. (See Rev. Sts. *c.* 95, § 27, and *c.* 137,
§ 6.) The counsel referred to *Commonwealth* v. *Knapp,* 9 Pick.
496. THE COURT decided, notwithstanding *Knapp's case,* that
*the right of peremptory challenge, if exercised at all, must be*
exercised in the first instance, before the juror should be inter-
rogated as to his bias or opinions.

In the course of the trial, the defendant called a witness, who
was objected to, by the attorney for the Commonwealth, as in-
competent, on the ground of his having been convicted of the

offence of receiving stolen goods, knowing them to have been stolen. The record of his conviction of that offence was produced.

THE COURT decided that the witness was incompetent ; that though there was no known adjudication on this precise question, yet, whether the nature and aggravation of the offence, or its moral turpitude and its statute punishment were considered, they were of opinion that it rendered the convict infamous.

The evidence was full and uncontradicted, that the defendant, at the time alleged in the indictment, was a prisoner in the state prison, and then and there killed the warden of the prison by stabbing him in the neck with a knife. The sole ground on which the defendant's counsel placed his defence was, that he was insane when he committed the homicide ; and most of the evidence, on both sides, related to this single point. The superintendents of several insane hospitals were witnesses in the case, and their testimony tended strongly to prove that the defendant, at the time of the homicide, was laboring under that species of insanity which is hereinafter commented on by the chief justice in the charge of the court to the jury.

The opinion of the court on the law of the case was given in the following charge to the jury by

SHAW, C. J. In order to constitute a crime, a person must have intelligence and capacity enough to have a criminal inten. and purpose ; and if his reason and mental powers are either so deficient that he has no will, no conscience or controlling mental power, or if, through the overwhelming violence of mental disease, his intellectual power is for the time obliterated, he is not a responsible moral agent, and is not punishable for criminal acts.

But these are extremes easily distinguished, and not to be mistaken. The difficulty lies between these extremes, in the cases of partial insanity, where the mind may be clouded and weakened, but not incapable of remembering, reasoning and judging, or so perverted by insane delusion, as to act under false impressions and influences. In these cases, the rule of law, as we understand it, is this : A man is not to be excused from responsibility, if he has capacity and reason sufficient to enable him to

distinguish between right and wrong,* as to the particular act he is then doing ; a knowledge and consciousness that the act he is doing is wrong and criminal, and will subject him to punishment. In order to be responsible, he must have sufficient power of memory to recollect the relation in which he stands to others, and in which others stand to him ; that the act he is doing is contrary to the plain dictates of justice and right, injurious to others, and a violation of the dictates of duty.

On the contrary, although he may be laboring under partial insanity, if he still understands the nature and character of his act, and its consequences ; if he has a knowledge that it is wrong and criminal, and a mental power sufficient to apply that knowledge to his own case, and to know that, if he does the act, he will do wrong and receive punishment; such partial insanity is not sufficient to exempt him from responsibility for criminal acts.

If then it is proved, to the satisfaction of the jury, that the mind of the accused was in a diseased and unsound state, the question will be, whether the disease existed to so high a degree, that for the time being it overwhelmed the reason, conscience, and judgment, and whether the prisoner, in committing the homicide, acted from an irresistible and uncontrollable impulse : If so, then the act was not the act of a voluntary agent, but the involuntary act of the body, without the concurrence of a mind directing it.

The character of the mental disease, relied upon to excuse the accused in this case, is partial insanity, consisting of melancholy, accompanied by delusion. The conduct may be in many respects regular, the mind acute, and the conduct apparently governed by rules of propriety, and at the same time there may be insane delusion, by which the mind is perverted. The most common of these cases is that of *monomania,* when the mind broods over *one idea* and cannot be reasoned out of it. This may operate as an excuse for a criminal act in one of two modes.

---

* See opinion of the judges given to the House of Lords, 1 Car. & Kirw. 130 - 136.  Shelford on Lunatics, c. 12, § 1.  *Dew* v. *Clark,* 3 Addams, 79.  *Regina* v *Oxford,* 9 Car & P. 525.  *Rex* v. *Offord,* 5 Car. & P. 168.  *Regina* v. *Higginson,* 1 Car. & Kirw. 129.  1 Russell on Crimes, c. 1.

1. Either the delusion is such that the person under its influence has a real and firm bel ef of some fact, not true in itself, but which, if it were true, would excuse his act : As where the belief is, that the party killed had an immediate design upon his life, and under that belief the insane man kills in supposed self defence. A common instance is where he fully believes that the act he is doing is done by the immediate command of God, and he acts under the delusive but sincere belief that what he is doing is by the command of a superior power, which supersedes all human laws, and the laws of nature. 2. Or this state of delu sion indicates, to an experienced person, that the mind is in a diseased state ; that the known tendency of that diseased state of the mind is to break out into sudden paroxysms of violence, venting itself in homicide or other violent acts towards friend or foe indiscriminately ; so that although there were no previous indications of violence, yet the subsequent act, connecting itself with the previous symptoms and indications, will enable an experienced person to say that the outbreak was of such a character, that for the time being it must have overborne memory and reason ; that the act was the result of the disease and not of a mind capable of choosing ; in short, that it was the result of uncontrollable impulse, and not of a person acted upon by motives, and governed by the will.

The questions, then, in the present case, will be these : 1. Was there such a delusion and hallucination ? 2. Did the accused act under a false but sincere belief that the warden had a design to shut him up, and, under that pretext, destroy his life ; and did he take this means to prevent it ? 3. Are the facts of such a character, taken in connexion with the opinions of the professional witnesses, as to induce the jury to believe that the accused had been laboring for several days under monomania, attended with delusion ; and did this indicate such a diseased state of the mind, that the act of killing the warden was to be considered as an outbreak or paroxysm of disease, which for the time being overwhelmed and superseded reason and judgment, so that the accused was not an accountable agent ?

If such was the case, the accused is entitled to an acquittal ;

otherwise, as the evidence proves beyond all doubt the fact of killing, without provocation, by the use of a deadly weapon, and attended with circumstances of violence, cruelty, and barbarity, he must undoubtedly be convicted of wilful murder.

The ordinary presumption is, that a person is of sound mind, until the contrary appears ; and in order to shield one from criminal responsibility, the presumption must be rebutted by proof ot the contrary, satisfactory to the jury. Such proof may arise, either out of the evidence offered by the prosecutor to establish the case against the accused, or from distinct evidence, offered on his part; in either case, it must be sufficient to establish the fact of insanity ; otherwise, the presumption will stand.

The opinions of professional men on a question of this description are competent evidence, and in many cases are entitled to great consideration and respect. The rule of law, on which this proof of the opinion of witnesses, who know nothing of the actual facts of the case, is founded, is not peculiar to medical testimony, but is a general rule, applicable to all cases, where the question is one depending on skill and science in any particular department. In general, it is the opinion of the jury which is to govern, and this is to be formed upon the proof of facts laid before them. But some questions lie beyond the scope of the observation and experience of men in general, but are quite within the observation and experience of those whose peculiar pursuits and profession have brought that class of facts frequently and habitually under their consideration. Shipmasters and seamen have peculiar means of acquiring knowledge and experience in whatever relates to seamanship and nautical skill. When, therefore, a question arises in a court of justice upon that subject, and certain facts are proved by other witnesses, a shipmaster may be asked his opinion as to the character of such facts. The same is true in regard to any question of science; because persons con versant with such science have peculiar means, from a larger and more exact observation, and long experience in such department of science, of drawing correct inferences from certain facts, either observed by themselves or testified to by other witnesses. A familiar instance of the application of this principle occurs very

often in cases of homicide, when, upon certain facts being testified to by other witnesses, medical persons are asked, whether in their opinion a particular wound described would be an adequate cause, or whether such wound was, in their opinion, the actual cause of the death, in the particular case. Such question is commonly asked without objection ; and the judicial proof of the fact of killing often depends wholly or mainly upon such testimony of opinion. It is upon this ground, that the opinions of witnesses, who have long been conversant with insanity in its various forms, and who have had the care and superintendence of insane persons, are received as competent evidence, even though they have not had opportunity to examine the particular patient, and observe the symptoms and indications of disease, at the time of its supposed existence. It is designed to aid the judgment of the jury, in regard to the influence and effect of certain facts, which lie out of the observation and experience of persons in general. And such opinions, when they come from persons of great experience, and in whose correctness and sobriety of judgment just confidence can be had, are of great weight, and deserve the respectful consideration of a jury. But the opinion of a medical man of small experience, or of one who has crude and visionary notions, or who has some favorite theory to support, is entitled to very little consideration. The value of such testimony will depend mainly upon the experience, fidelity and impartiality of the witness who gives it.

One caution, in regard to this point, it is proper to give. Even where the medical or other professional witnesses have attended the whole trial, and heard the testimony of the other witnesses, as to the facts and circumstances of the case, they are not to judge of the credit of the witnesses, or of the truth of the facts testified by others. It is for the jury to decide whether such facts are satisfactorily proved. And the proper question to be put to the professional witnesses is this : If the symptoms and indications testified to by other witnesses are proved, and if the jury are satisfied of the truth of them, whether, in their opinion, the party was insane, and what was the nature and character of that insanity ; what state of mind did they indicate

and what they would expect would be the conduct of such a person, in any supposed circumstances. [See 1 M. & Rob. 75.]

The jury, after being in consultation several hours, came into court, and asked instructions upon these two questions: "Must the jury be satisfied, beyond a doubt, of the insanity of the prisoner, to entitle him to an acquittal? And what degree of insanity will amount to a justification of the offence?"

In answer to the first of these questions, the chief justice repeated his former remarks on the same point, and added that if the preponderance of the evidence was in favor of the insanity of the prisoner, the jury would be authorized to find him insane. In answer to the second question, the chief justice added nothing to the instructions which he had previously given.

The jury afterwards returned a verdict of "not guilty, by reason of insanity."

*S. D. Parker,* for the Commonwealth.

*G. T. Bigelow & G. Bemis,* for the defendant.*

* The foregoing statement of the points adjudged in this case is taken from a report of the trial, prepared and published by Messrs. Bigelow & Bemis, who were assigned by the court as counsel for the defendant. In that report, all the testimony, the arguments of counsel, the decision of the court on the legal ques tions raised, and the charge to the jury, are accurately stated